Brian Miller
MORRISON, SHERWOOD, WILSON, & DEOLA, PLLP
401 North Last Chance Gulch
Helena, MT  59601
406-442-3261 Phone
406-443-7294 Fax
bmiller@mswdlaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| TOM REED, and JERRY REED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL SMITH, PHILLIP MARC HAYS, GREENWAY CONSULTING,<br>Defendants. | Case No. CV-22-51-GF-BMM<br><br>**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs, TOM and JERRY REED and allege as follows.

1. Tom Reed is a resident of the State of Nevada.

2. Jerry Reed is a resident of the State of Ohio.

3. Upon information and belief, Michael Smith is a resident of Colorado.

4. Upon information and belief, Phillip Marc Hays is a resident of Florida.

5. Upon information and belief, Greenway Consulting and Management, LLC,

   is a domestic Montana corporation owned and operated by Michael Smith.

6. The prime subject matter of this lawsuit is the purchase of ownership units in a marijuana dispensary business whose initial location was to be run and operated at 69 Haypress Lake Trail, Ennis, Montana, Madison County, as well as other locations throughout the State of Montana. Material misrepresentations and tortious conduct occurred in Ennis, Montana, and performance of promised operations was to occur there, thus making venue appropriate in Madison County, State of Montana, and in the Butte Division of the Federal District of Montana, pursuant to the Local Rules of the Federal District of Montana.

7. Jurisdiction over this matter is appropriate in this Court under the rules governing diversity jurisdiction in federal district court.

8. Upon information and belief, Michael Smith ("Smith") has experience running marijuana grow operations and is a resident of Colorado.

9. Upon information and belief, Phillip Marc Hays ("Hays") has a background in business or finance and is a resident of Florida.

10. Smith and Hays founded MBM Management and Consulting, LLC ("MBM") in December of 2020 to work on developing business opportunities in the medical and recreational marijuana industries in Montana.

11. After founding MBM, Hays and Smith solicited investors for MBM through the online website, www.bizbuysell.com, which provides advertisements for a variety of different businesses throughout the United States.

12. Tom and Jerry Reed found MBM through www.bizbuysell, contacted Hays, and subsequent spoke to both Smith and Hays about investment opportunities in MBM.

13. The Reeds made several visits to Montana to examine the grow operations started by Smith.  When the Reeds visited Montana, Smith had started a grow operation at 69 Haypress Lake Trail in Ennis, Montana.  When Tom Reed was at the location, Smith showed Reed the grow operation of around 250 to 300 plants representing that all of the plants were growing for MBM to sell on January 1, 2022 when recreational marijuana sales went legal in Montana. Smith also sent Tom Reed videos of the grow operation.

14. Based upon the number of plants observed, the yield of marijuana for MBM should have been somewhere in the neighborhood of 500 to 600 lbs.

15. Smith verbally represented to the Reeds, on multiple occasions, that MBM had roughly $ 1 million in inventory that it was ready to sell when it began recreational operations on January 1, 2022.

16. In promotional materials sent to the Reeds, Smith and Hays represented, among other things, that Smith had vast experience in the marijuana industry,

and that MBM expected to gain 10 to 20% of the overall market in Montana due to the lack of existing large-scale players.

17. MBM also represented that it had initiated production with a 1000 sq ft area with $ 100,000 worth of produce already, and that it expected to open 12 stores within the first year of operation, would grow to 40 stores by 2023, and would seek to expand to a national scope of operation.

18. Smith and Hays also represented that a 1000 sq ft operation would yield 489 pounds per year. (Exhibit A, pg. 17).

19. Smith and Hays also represented that MBM had 3 stores in which company operations had been initiated.

20. Smith and Hays also represented that the budget operations for the first year would lead to about $ 4 million in revenue, with a net profit of $ 1.35 million. (Exhibit A, pg. 18).

21. On April 30, 2021, Hays offered the Reeds 32 ownership units in MBM at a price of $ 75,000 apiece for $ 2.4 million dollars. (Exhibit A, pg. 21).

22. The purpose of purchasing the ownership units was to put capital in MBM in order to funds its operations.  In their investment materials presented to the Reeds, Smith and Hays had noted as one of MBM's "weaknesses" the "lack of initial capital" (Exhibit A, pg. 20), and represented that the Reeds' investment would be used to fund the business operations.

23. On May 3, 2021, Hays sent the Reeds an email confirming that they were to wire $ 2.2 million dollars for 32 units of ownership in MBM, reflecting a reduction in the price of $ 200,000.00. (Exhibit A, pg. 19).

24. On May 24, 2021, through their business Green Venture Holdings, LLC, the Reeds wired $ 2.2 million dollars to Chase Bank per the instructions of Hays. (Exhibit A, pg. 25).

25. Hays and Smith attempted to distribute the proceeds among several different entities, which apparently led to Chase recalling $ 1,821,854.00 of the wire on June 23, 2021. (Exhibit A, pg. 26).

26. After the wire transfer failed, Smith represented to the Reeds that he lacked sufficient capital to close on the physical location in Ennis, Montana, and asked the Reeds to wire $500,000.00 to Madison Valley Bank for the title company to purchase the building for MBM. The Reeds wired the funds on July 8, 2021 for the building and it was understood that this investment went towards the $ 2.2 million dollar purchase price for 32 units.

27. Prior to sending the remaining funds for the $2.2 million, on or around July 14, 2021, Smith called Tom Reed and was upset because the funds weren't all there yet.  He told Tom Reed that he was going to make available 5 additional units of MBM for investment at a discounted rate. Smith asked Tom Reed to help him sell the units to anyone that was interested.  Tom and Jerry Reed

committed to buy 3 additional units for $205,000. Tom Reed individually bought an additional single unit through Madison Trust Company for $ 68,715.00. Tom Reed mentioned to several people the investment opportunity, and his friend, Nerik Yakubov, bought the final remaining unit for $75,000.00.

28. Tom Reed wired the remaining funds into three different accounts as requested by Hays and Smith: MBM bank account Stockman Bank, MBM bank account at Clearwater Credit Union, and to Cred Corp Group / Bank of America, which was an account held by Hays. The wire amounts were as follows:

   a. $ 200,000.00 on July 14, 2021 – MBM account at Stockman Bank

   b. $ 176,854.00 on July 14, 2021 – Cred Corp Group / Hays Account

   c. $ 200,000.00 on July 22, 2021 – MBM account at Clearwater Credit Union

   d. $ 200,000.00 on August 10, 2021 – MBM account at Stockman Bank

   e. $ 200,000.00 on August 10, 2021 – Cred Corp Group / Hays Account

   f. $ 200,000.00 on August 10, 2021 – MBM account at Clearwater Credit Union

   g. $ 175,000.00 on August 26, 2021 – Cred Corp Group / Hays Account

h. $ 175,000.00 on August 26, 2021 – MBM account at Clearwater Credit Union.

29. Total amounts wired for Green Venture Holdings, LLC (35 units) was $ 2,405,000.00

30. Total amount wired for Tom Reed, Madison Trust Account (1 unit) was $ 68,715.00

31. Total amount wired for Nerik Yakubov, First Class Timepieces (1 unit) was $75,000.00

32. At the beginning of November, 2021, Smith called Tom Reed stating that he was going to bankrupt the company unless he could get more capital because he never planned on MBM buying the property located at 47 Prairie Way, Ennis, MT.  Smith asked Tom Reed and Jerry Reed to purchase the property for $1,000,000 so that he could put that capital back into the MBM bank accounts and keep the business operating smoothly.  In an effort to protect their initial investment of $ 2,473,715.00, Tom Reed and Jerry Reed agreed to purchase the property located at 47 Prairie Way, Ennis, MT, so that MBM would have an additional $1,000,000 in operating capital.  It was agreed between Smith and the Reeds that 1 year of rent payments would be taken off of the transaction at a discount of $132,000 making the purchase price of the building $ 868,000.  The Reed's made the following wires:

    a.  $ 300,000.00 on November 19, 2021. (Exhibit A, pg. 5).

    b.  $ 50,000.00 on January 11, 2022. (Exhibit A, pg. 6).

    c.  $ 300,000 on February 4, 2022. (Exhibit A, pg. 6).

    d.  $ 218,000.00 on March 7, 2022. (Exhibit A, pg. 9).

33. Smith's behavior in Ennis while operating MBM was antagonistic and unprofessional and caused problems for MBM among members of the local community.  For reasons that are not clear, Smith got into a dispute with a member of the community in Ennis and informed the Reeds on February 9, 2022, that he feared for his safety and would have to leave Montana.  He started pushing hard at that point for both Tom Reed and Jerry Reed to invest in a New Mexico property so that the business could expand and he could run another operation in a different state.

34. At that time, the Reeds discussed buying out Smith's interest so that he could leave Montana, and possibly set up an operation in New Mexico.  However, the parties never came to any particular agreement regarding any future operations in New Mexico. Subsequently, Smith made a unilateral decision to spend MBM funds towards an operation in New Mexico without securing the consent of the Reeds.

35. At the beginning of April 2022, Smith called Tom Reed and stated that he was going to bankrupt MBM if he couldn't come up with more capital.  He stated

to Tom Reed that he was going to sell his remaining shares and get completely out of the business.  He threatened Tom Reed by stating that unless Tom or Jerry purchased Smith's remaining units that there was no possible way they could protect their investment since they would have no majority control of MBM.

36. At this point, the Reeds became concerned that Smith was embezzling funds from MBM based on his conduct and statements, in light of the representations Smith and Hays initially made to secure the Reeds' investments.

37. In order to salvage what he had already invested in MBM, Tom Reed agreed to buy Smith's remaining 35 units. (Exhibit A, pg. 27).  Upon hearing of this buyout, Hays immediately agreed to give his 10 units to Smith to sweeten the deal making the purchase for 45 units instead of 35 units.  Hays made it clear that he wanted completely out of MBM.

38. Based on their positions in the company, both Smith and Hays knew the MBM bank accounts were drained to a point of nearly bankrupting the company based on their management of the accounts.

39. Reed, Smith and Hays agreed in writing that Reed would wire $200,000.00 that was to stay in the MBM bank account for operating expenses only.  Smith was under strict instructions to not use any of the $200,000.00 for his personal

use and he and his wife were to no longer receive any type of distribution or salary. Reed was then given 60 days to wire the remaining $ 1,000,000.00 to Smith as a buyout for Smith's and Hays' 45 units.

40. Within the 60-day time period from April, 6, 2022 to June, 6, 2022, Smith made personal American Express payments, and paid himself and his wife a total of $ 50,419.00 from the MBM Clearwater Credit Union bank account.

41. On May 17, 2022, Smith called Tom Reed upset stating that he could not make payroll due to the fact that he had paid $30,000.00 to New Mexico attorney Trisha Monaghan for the Reed's to obtain a license in New Mexico at Smith's request. He also proceeded to tell Tom Reed that he'd spent another $28,615.00 on expenses in New Mexico, and that it was Tom Reed's responsibility to pay all of that total back to MBM or else the shareholders would likely sue and bankrupt the business before Tom Reed could purchase the rest of the shares.

42. Tom Reed subsequently wired $58,615.00 to the MBM account on May, 17, 2022 to make sure the MBM account was clear from anything Smith was expending in New Mexico.

43. On June 1, 2022, Smith called Tom Reed upset stating that he was not able to make payroll once again and that it was Tom's responsibility to send him $35,000 to cover the payroll expense. At this point, Tom Reed explicitly told

Smith that he did not own the company yet, and was not paying a dime over the $1.2 million dollar agreed price. Reed told Smith the business was not to come with any debts as agreed in writing on April, 6, 2022, and that he would stop the deal if Smith didn't cover the missing payroll out of his end.

44. Smith agreed and Tom then wired the $35,000.00 to MBM on June 1, 2022. Five (5) days later on June, 6, 2022, Tom Reed wired the remaining $965,000.00 to Smith to get Smith completely out of MBM.

45. During this timeframe, the Reeds had wired the following amounts on the following dates into MBM to keep it operational:

   a. $ 10,180.00 on February 11, 2022. (Exhibit A, pg. 7).

   b. $ 50,000.00 on June 14, 2022. (Exhibit A, pg. 15).

   c. $ 30,000.00 on June 16, 2022. (Exhibit A, pg. 16).

   d. $ 25,000.00 on June 27, 2022.

46. During the time that MBM was in operation and the Reeds invested money into the business, Smith was in control of the operations and insisted that he was running the business in a manner consistent with his representations regarding profitability.   However, in spite of the investments of the Reeds, MBM was not producing any substantial revenue, or any profits as represented that it would.  Instead, it appears that Smith was mismanaging MBM and potentially diverting its revenue for his personal benefit.

47. After gaining control of MBM, the Reeds were able to gain access to the accounts of MBM and were able to gain more information about how Smith had run MBM and how he had disposed of its funds.

48. For instance, on November 26, 2021, Smith wired $ 100,000.00 from MBM's Clearwater Credit Union Account to Bank of Colorado for Greenway Consulting. (Exhibit A, pg. 1). Upon information and belief, the $ 100,000.00 may have been used for Smith's personal benefit, and not to further the operations of MBM.

49. Similarly, on January 5, 2022, Smith wired $ 68,715.00 from MBM's Clearwater Credit Union Account to his personal account at Bank of Colorado. (Exhibit A, pg. 2). Upon information and belief, these funds may have been used for Smith's personal benefit, and not to further the operations of MBM.

50. Additionally, on February 7, 2022, Smith wired $ 100,000.00 from MBM's Clearwater Credit Union Account to his personal account at Bank of Colorado. (Exhibit A, pg. 3). Upon information and belief, these funds may have been used for Smith's personal benefit, and not to further the operations of MBM.

51. Lastly, on September 28, 2021, Smith transferred $ 75,000 from MBM's Clearwater Credit Union account to his personal savings account. (Exhibit A,

pg. 4).   Upon information and belief, these funds nay have been used for Smith's personal benefit, and not to further the operations of MBM.

52. Smith also transferred the following amounts to pay an American Express credit card in his personal name, on the following dates for the following amounts:

    a. $ 28,108.83 on November 16, 2021. (Exhibit A, pg. 5).

    b. $ 21,052.98 on December 6, 2021. (Exhibit A, pg. 5).

    c. $ 17,793.09 on December 17, 2021. (Exhibit A, pg. 6).

    d. $ 7,633.52 on January 12, 2022. (Exhibit A, pg. 6).

    e. $ 3,505.98 on both January 14 and 20, 2022. (Exhibit A, pg. 6).

    f. $ 37, 497.20 on February 7, 2022. (Exhibit A, pg. 7).

    g. $ 3,164.72 on February 7, 2022. (Exhibit A, pg. 7).

    h. $ 12,131.75 on February 15, 2022. (Exhibit A, pg. 7).

    i. $ 1,989.33 on February 22, 2022. (Exhibit A, pg. 8).

    j. $ 5,001.16 on March 28, 2022. (Exhibit A, pg. 10).

    k. $ 18,400.32 on April 14, 2022. (Exhibit A, pg. 11).

    l. $ 7,551.69 on May 5, 2022. (Exhibit A, pg. 13).

    m. $ 10,000 on May 18, 2022. (Exhibit A, pg. 14).

53. Smith also apparently made payments on his personal Chase credit card with MBM funds on the following dates and for the following amounts:

    a.  $ 2,835.00 on January 14, 2022. (Exhibit A, pg. 6).

    b.  $ 3,982.88 on February 7, 2022. (Exhibit A, pg. 7).

    c.  $ 447.89 on April 18, 2022. (Exhibit A, pg. 12).

54. It is unknown at this time whether the expenses charged on the Chase and American Express cards were personal expenses for Mr. Smith, or were expenses incurred in the operation of MBM.

55. Additionally, Smith purchased a trailer for approximately $ 11,000 with MBM funds from Trailers Plus in Helena, Montana.  Upon information and belief, this trailer is now at Smith's personal residence in Colorado.

56. Between April 6, 2022, and June 1, 2022, MBM barely generated any revenue and Smith made payments totaling approximately $ 35,000 to credit cards in his name personally and did not provide any accounting of the purposes for which those funds were spent.

57. Since gaining control of MBM, the Reeds have noted what appeared irregularities and tortuous conduct in the operations of MBM.  As of the filing of this complaint, this conduct includes the following:

    a.  An extremely low yield of marijuana inventory from the crop shown to them in the summer of 2021.  Although Smith constantly represented that they had approximately $ 1 million dollars in inventory for the start of operations in January of 2022, this amount never materialized.

Furthermore, based on the size of the initial crop that the Reeds noticed in the summer of 2021, the yield should have been in the neighborhood of 250 lbs; the actual yield, however, was only 16 pounds, and as of the filing of this complaint, they are unable to account for the missing inventory;

b.  Misrepresentations regarding the profitability of the business;

c.  Unaccounted for wire transfers and payments to Smith's personal credit cards;

d.  A payment of $ 500,000 to Hays as a brokerage fee for the Reeds investment in MBM which was never disclosed;

e.  Lack of transparency in the financial operations of MBM, and refusal to provide requested information.

58. On June 15, 2022, Tom Reed requested information on the American Express cards as well as the various wires made by Smith. (Exhibit A, pg. 24). Smith refused to provide the requested information, and instead accused Tom Reed of fraud, and called him a "motherfucking lying thiefy fucking fraud," instead of providing him the requested information. (Exhibit A, pg. 22-23).

59. It appears that Smith and Hays have engaged in a range of tortious conduct. Starting with their misrepresentations and fraudulent conduct in soliciting the Reeds' investments, the payment of an undisclosed $ 500,000 brokerage fee

to Hays (when they lead the Reeds to believe that money would be invested in MBM to further its operations), and Smith's mismanagement and potential use of MBM's funds for his personal benefit, the Defendants have caused harm to the Reeds through tortious conduct.

60. The damages sustained by the Reeds include, but are not limited to, the following: $ 500,000.00 brokerage fee paid to Hays; any funds that Smith used from the MBM accounts for his personal benefit; any other funds that Smith diverted from MBM's accounts for his sole business ventures; loss of the value of MBM inventory potentially diverted from MBM's business operations (i.e., marijuana plant inventory that was not sold through MBM's lawful business operations); loss in value due to misrepresentations concerning the actual value of MBM's assets; and other damages that may be learned in discovery.

## Count I-Constructive fraud

61. The foregoing paragraphs are realleged as though set forth in full.

62. Smith committed constructive fraud with his representations that MBM would have a million dollars of inventory starting in January of 2022.

63. Smith either knew the statement was false, or was ignorant as to whether it was true.

64. The Reeds believed the statement, relied on the statement, were not aware it was false, had a right to rely on it, and were damaged by investing in the business.

65. Smith committed constructive fraud with his representations regarding the yield to be obtained from the marijuana plants that the Reeds observed during their visits to Montana in the spring and summer of 2021. Smith represented that the yield of the crop would be several hundred pounds, when it only ended up being 16 pounds.

66. Smith either knew the statement was false, or was ignorant as to whether it was true.

67. The Reeds believed the statement, relied on the statement, were not aware it was false, had a right to rely on it, and were damaged by investing in the business.

68. Smith and Hays committed constructive fraud regarding their representations about the profitability of MBM, in particular the statements that in its first year of operation MBM would bring in $ 4 million in revenue, with a net profit of $ 1.35 million.

69. Smith and Hays either knew the statements were false, or were ignorant as to whether they were true.

70. The Reeds believed the statements, relied on the statements, were not aware they were false, had a right to rely on them, and were damaged by investing in the business.

71. Smith committed constructive fraud with his representations regarding the readiness of the physical infrastructure of MBM.  Smith represented that the building for the grow operation would be up and running as part of the operations of MBM, but after the Reeds had invested substantially in the business, he informed them that he was unable to finish the building due to lack of funding.

72. Smith either knew the statements were false, or were ignorant as to whether they were true.

73. The Reeds believed the statements, relied on the statements, were not aware they were false, had a right to rely on them, and were damaged by investing in the business.

74. The Reeds were damaged by the representations made herein, as they made substantial investments in MBM and did not receive the returns promised and represented by Smith and Hays.

75. But for the fraudulent representations of Smith and Hays, the Reeds would not have invested funds in MBM.

**Count II-Deceit**

76. The foregoing paragraphs are realleged as though set forth in full.

77. Smith and Hays committed the tort of deceit by failing to disclose to the Reeds that $ 500,000 of their $ 2.2 million dollar investment would be paid to Hays as a brokerage fee instead of being placed in the business as operating capital.

78. Smith and Hays suppressed that fact, but yet were bound to disclose it, since they represented to the Reeds that the money they invested would be put towards the operations and profitability of MBM, and never disclosed that any part of it would be paid to Hays as a brokerage fee.  In the promotional materials, Hays is identified as the "CFO/Treasurer" of MBM and failed to disclose that he was separately paid a brokerage fee. This conduct constitutes deceit.

79. The Reeds are entitled to a full return of their $ 500,000 plus interest.

**Count III-Tortious breach of the covenant of good faith and fair dealing**

80. The foregoing paragraphs are realleged as though set forth in full.

81. The LLC was governed by an operating agreement and the law applicable to LLCs.

82. The Reeds invested substantial funds for authorized units which would entitle them to distributions from MBM.

83. Pursuant to Section 35-8-503, MCA, Tom and Jerry Reed held an equal right to share in the profits, losses and surpluses of MBM.

84. Pursuant to Section 35-8-601, MCA, distributions shall be shared equally among the members.

85. Implied by law in every contract is a covenant of good faith and fair dealing that requires honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. The covenant derives from the justified expectation of each party that the other will act in a reasonable manner in its performance.

86. Smith and/or Hays breached the implied covenant of good faith and fair dealing for the LLC in the following ways:

   a. Paying Hays a $ 500,000.00 brokerage fee without disclosing it in advance or gaining the Reeds' consent;

   b. Potentially using MBM funds to pay for Smith's personal expenses;

   c. Failing to run the business in a profitable and commercially reasonable manner as represented prior to the Reeds' investments

87. The Reeds were damaged by said breaches and entitled to damages for all amounts proximately caused thereby.

**Count IV-Punitive Damages**

88. The foregoing paragraphs are realleged as though set forth in full.

89. Smith and Hays acted with actual or implied malice and fraud in the actions described herein, within an intent to defraud the Reeds.

90. Smith and Hays should be punished for their wrongdoing by the imposition of punitive damages as allowed upon proof at trial.

**Relief Sought**

1. A jury trial on all matters of triable fact;

2. Compensatory and punitive damages as allowed by law;

3. Any other relief deemed necessary and just.

Dated this 19th day of July, 2022

*/s/ Brian J. Miller*

Attorney for Plaintiffs